The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good morning. This is case number 4-23-1305, Scott Jones v. American Alliance Casualty Company. Counsel for the appellant, could you identify yourself for the record? Good morning, Your Honor. Pat Eckler for the appellant, American Alliance Casualty Company. Okay, thank you. And counsel for the appellate, could you identify yourself? Yes, Jeff Green for Herman Scott and Arion Jones, the appellees. Thank you. Mr. Eckler, you may proceed with your argument. Thank you, Your Honor. Good morning, and may it please the court. Based on the plain text of the applicable statute, the structure of the statute, and both legislative inaction and judicial action, the answer to the certified question is no. An insurer which issues a minimum limits policy of personal lines automobile insurance in Illinois is not automatically required to include underinsured motorist coverage in the policy. Mr. Eckler, could you pause for a moment? And I apologize for this. You'll get additional time here, but I do want to address, there was a motion that your client filed for leave to submit supplemental authority. I just want to indicate the panel has conferred, and the court will allow that motion. Thank you. Thank you, Judge, and thank you, Justices Doherty and Darmond as well. All right, you may proceed. Thank you. Indeed, the Illinois Supreme Court in DeGrande stated, quote, we find the 1982 statute, which is the statute that's operative here, did not require insurers to offer underinsured motorist coverage to automobile purchasers who opted for uninsured motorist coverage at the minimum statutory level. That is what happened in this situation, and that should be the beginning and end of the inquiry for this court. Justice Harris, you mentioned the motion for leave to file the supplemental authority and rely on an argument today. That is from the website of the Department of Insurance that confers our position with regards to the proper interpretation of the statute. We'd ask the court to rely upon that as persuasive authority in support of our position. Instead of following the text of the statute that we all agree is clear and unambiguous, the appellee's argument is that the case law has moved beyond the statutory text. This argument is not only incorrect, but an invitation for this court to ignore the plain language of the statute. I'm sorry for interrupting. How long has the language of the statute been as it is? Since 1982, Judge. It applies for policies issued on or after January. I want to make sure I get the correct date. July 1, 1983, Judge. In that time, has that particular provision of the statute, 143A-2, been amended? The language that it's an issue here, no, it has not. The language that I'm relying upon where such uninsured motorist coverage exceeds limits set forth in Section 7-203 of the Illinois Vehicle Code has not been amended. I'm trying to be specific because counsel points to the however language that was removed following the Cummins decision from the Illinois Supreme Court, but both before the Cummins decision at the time that the General Assembly was considering what the impact was of the Cummins decision and in the 20 or more years since then, the General Assembly has left that language that begins, that I just read, where such uninsured motorist coverage exceeds the limits has left that language alone. And that's the key language that answers the question for this court, along with the Supreme Court decision in DeGrand and the other sources that we have cited. The appellees concede that that language is is plain and unambiguous, but it's contrary to their policy preference. It is, I'm not going to, I don't want to be presumptuous, your honors, but it's not up to the court to set the policy. The General Assembly has set the policy for the state and that underinsured motorist coverage is not required in a minimum limits policy. The General Assembly has expressed that policy in the text of section 143A-2 section 4 that your honor mentioned and that text could not be more clear. The statute provides that underinsured motorist coverage as defined therein must be provided in an amount equal to the amount of uninsured motorist coverage provided in that policy where such uninsured motorist coverage exceeds the $25,000 per person and $50,000 per accident. A minimum limits policy by definition does not exceed the limits set forth in that section of the code. Mr. Eckler, what did the trial court say in regards to this argument that you're making on appeal? The trial court held that it seemed that the trial court was confused by what the statute says. I think it was part of the reason the court certified the question as an aid to it in trying to determine whether my client was required to have this language in the policy. The court found that we were required to have it, but I think also it's important that the court certified the question to get a clear answer from this court as to whether it is required. We believe that the trial court erred in that regard and should have granted the motion to dismiss, but we're not here on a review of the motion to dismiss. We are simply here on the certified question under Rule 308 that the circuit court certified and that this court accepted. The structure of the statute also supports an answer to the certified question in the negative. Section 143A2 was entitled, quote, additional uninsured motor vehicle coverage, end quote. And the first three sections of the statute concern just that, uninsured motorist coverage above the minimum limits coverage being offered where the liability limits of the policy exceed the minimum limit. Those sections then delineate the right of an insured to reject such additional coverage while still being required to have the minimum limits as set forth in Section 143A. Section 143A requires that no policy may be issued in Illinois without at least the minimum limits of uninsured motorist coverage of $25,000 per person and $50,000 per accident. Then we come to Section 4 of 143A2, which is the section at issue in this case, which concerns underinsured motorist coverage, which the General Assembly has categorized as a type of additional uninsured motorist coverage. And again, additional to what? Additional above the minimum limits required to be issued of a $25,000 per person and a $50,000 per accident uninsured motorist limit. And there is no rejection specific to underinsured motorist coverage. And that's because the underinsured motorist coverage simply tracks what the uninsured motorist coverage is and requires that the underinsured motorist coverage be equal to the uninsured motorist coverage to the extent that uninsured motorist coverage exceeds the Turning to the history, and we've touched on this already, both the legislative and judicial history support a negative finding in answer to the certified question. And when I refer to legislative history here, I'm not talking about committee comments or floor debate. I'm referring to what the legislature did in 1982 and what it hasn't done since. And that is disturb the language that we're relying on. Every case cited by the plaintiff involves a situation in which the insured had more than the minimum limits coverage. Again, the court or the General Assembly for the past 40 years has left this language alone. And that's very telling, despite having the opportunity on at least one occasion, having amended this statute to deal with the very situation that the plaintiff brings to this court. Every court that has confronted this question has held that no underinsured motorist coverage is required in a minimum limits policy. The General Assembly, despite amending the statute following Cummins, touched the language. Based upon the text, structure, and history of the operative statute, the clear answer to the question is in the negative. In view of this, the appellees argue that for application of public policy. But what public policy? The General Assembly has set forth that the public policy of this state is not requiring underinsured motorist coverage to be provided in a minimum limits policy of personalized automobile insurance. This court may not and should not upend the plain text of the statute by answering the certified question in a manner that's contrary to the text, long-settled law, and historical practice of insurers. The insurer in this case. Also, may I ask, plaintiff has placed a great deal of reliance on Cummins. Tell me where Cummins fits in your analysis. It doesn't, Your Honor, because it deals with a policy that was not a minimum limits policy, number one. It deals with a multi, it deals with something different than the question that's presented. This question, the question presented that was certified does not deal with a multi, a multi-injury situation. This gets to my point, which is that the insured in this case could have opted for higher liability limits, thus triggering higher uninsured and thus underinsured motorist limits. But the insured didn't do that here. He paid less in premium as a consequence of that choice. That, that gets to the policy concern that the General Assembly has with carving out underinsured motorist coverage for not having to match the uninsured motorist coverage where there is a minimum limits policy. Mr. Axler, would you agree with counsel for Appley that plaintiffs would have been better off if Lloyd, the other driver, had been uninsured as opposed to having carried the minimum liability limits? They would have been, but that's not what Illinois law requires. Well, just as a, from a practical standpoint, they would have been better off if he carried no insurance at all. That's true. That's true, Justice. I won't dispute that, but that's not... Okay, second question then is, counsel argues then that that would be an absurd result if we interpret it in the way that the statute reads literally, and we should guard against absurd results. What is your response? The absurdity canon only comes into place where you have an ambiguity, where you have a choice between a one solution, one reading that is clear that leads to a non-absurd result, and one result that is absurd, and you choose between the two and you choose the non-absurd result, but that's not the case here because we don't have an ambiguous statute. So, therefore, we don't reach the application of the absurdity canon doesn't apply because we don't have ambiguity. This is also not absurd because of the policy choice the General Assembly made, and this is where I was going a moment ago. That is that if you raise, if you required minimum limits policies to have underinsured motorist coverage, then what would happen is you would raise the cost of minimum limits policies, meaning fewer people would have liability insurance in the first instance, and the judgment that the General Assembly has made is that that would be a worse result for the state in general because they're practicalities and the policy of having people have liability insurance in the first instance. That would be a worse result for the state than the uncommon situation that's pointed to here. I would also point out that, return to my point earlier, that if the insured in this case wanted underinsured motorist limits that were higher than the minimum, he could have purchased that would have been available for my client, but he could have done that, but he didn't. He paid less for that. This is also where the interpretation from the department is helpful in articulating how underinsured motorist coverage works and how people can ascertain what they want for their benefit. The primary goal of mandatory automobile insurance is to make sure that people have liability insurance. The General Assembly has made the decision that you have to have uninsured motorist coverage, and it's only required underinsured motorist coverage above that limit. It's required uninsured motorist coverage because it recognizes that situations where people don't have insurance do exist, and that's because we don't have PIP coverage in to protect their own first-party injuries in the event that the person who hits them either doesn't have insurance or doesn't have enough insurance. That's also where medical payments coverage may come in, which is not a mandatory coverage, but uninsured motorist coverage is designed to deal with the vast majority of situations where an at-fault tort feeser is uninsured, and then they have coverage. They usually get coverage where the person is insured from the liability carrier, and then you have the rare situation that underlies here, but that really doesn't get to the question that is presented to this court. That is whether the policy was required to have such coverage, and this is what brings us also to the Galuski case, which I'm probably mispronouncing horribly. Under certain circumstances, an insurer such as my client could find itself subject to consumer fraud in the event that it sold an underinsured motorist policy in a minimum limits policy because it is so rarely used as to be nearly worthless, and so the insurers in that case, which is a 1985 case from the Illinois Supreme Court that is still good law, is that those insurers are potentially liable to consumer fraud. You can certainly understand it, and that situation predated the statute in this case, and so the case didn't, but the underlying facts did. I don't know how important that case is to your argument, but isn't it true that case involved an action on the pleadings? The Supreme Court didn't actually come out and make that finding that it would be fraud. That was an allegation in the pleading, and the Supreme Court was just taking that as true. I agree with that, Your Honor. That's why I didn't lead with it. I bring it up as depending upon, it would put an insurer in a heck of a trick bag to have to require to sell a product that if it didn't sell it in precisely the right way, it could find itself subject to a consumer fraud action, and so that certainly gives guidance to that's really not what we want insurers to do to get anywhere near acting in a way that could be considered consumer fraud. I take your point, Your Honor, and I take plaintiff's point that the court didn't say as a per se categorical rule you could never do it. What Section 143A-2 says is you don't have to sell it. The issue before this court is whether you do, and the position taken by plaintiff's counsel is that you do, and that's simply incorrect. The practice of insurers is important in the wake of that decision, which is 40 years old, that insurers don't sell this product, don't sell this coverage, I should say, with a minimum limits policy and charge a premium for it because that would potentially subject them to consumer fraud, and I can tell you as having represented insurers for a very long time that is something that they want to steer clear of if they can, and the question then becomes are they now in a trick bag where under counsel's proposition my client is subject to consumer fraud for not offering this coverage, whereas they could be subject to consumer fraud for selling the coverage. That can't be the trick bag that insurers find themselves in. What this court should do is look to the plain and unambiguous language of Section 143A-2 Section 4, which says that underinsured motorist coverage is only required to be offered in a policy that exceeds minimum limits coverage, and the policy in this case did not, and therefore it was not required to, but the court here doesn't need to reach the facts of this particular case. You should just look at the certified question, which is answered by the General Assembly's actions and inactions, the conduct of the Supreme Court in the DeGrand case, the plain language of the statute, the language from the website that we cited of the Department of Insurance. For all of these reasons, we ask that the court answer the certified question in negative and remand the matter for further proceedings. If there are no further questions, I'll reserve the remainder of my time for rebuttal. Okay, I don't see any other questions, and you will have time in rebuttal. Mr. Green, you may proceed with your argument. May it please the court. Let me hit a few things I think the court brought up during the appellant's argument. One is that when the trial court ruled in this case, they did rule against American Alliance. The court specifically stated that he thought that the statute was confusing. There has to be some protection for consumers. Can I stop you there? What is confusing about the language? It would seem that the limitation that is contained in the statute is very clear. I guess that depends if the court just looks at 143A, standing alone, or whether we also look at in our pleadings and in our argument, whether you also look at 7-203, the minimum financial responsibility law. This would be the only situation in any case where someone has purchased automobile insurance in the state of Illinois where they would be shifted, taken, or usurped of the ability to recover up to $25,000 of either uninsured or underinsured coverage. It's a situation where their hit or the at-fault party, the tortfeasor, has also minimum limits, and there's more than one party that is injured in the case. That's the situation that Cummins speaks directly to. So, I think when you look at those two statutes in conjunction, there's certainly a question that arises as to whether or not that's what they intended. In addition, in 143A, it specifically says that the underinsured coverage provided the insured is defined in the policy at the time of the crash. The limits of liability for an insurer providing underinsured motor coverage shall be limits of such coverage less those amounts actually recovered. I think that's the specific factual scenario we're talking about here, is where the limits recovered are less than the limits of the policy or the underinsured, uninsured portion of the policy. Given how long this language has been in place, and I'm talking about the restriction of where it is limited to situations where the uninsured motor's coverage exceeds the limits in 7-203, given the length of time it's remained in that same state, but the legislature not amending it, doesn't that tell us that the legislature doesn't consider this to be an oversight, that this is intentional, that it wishes for it to be applied just as it reads? Respectfully, I don't believe so. Because again, when you look at it in conjunction with 7-203, does it make any sense we'd have a minimum financial responsibility law when it comes to insurance or limits of insurance? And there's one scenario where a person does not have the ability to recover up to their minimum limits of insurance. And so, I don't believe so. Also, and Mr. Eckler broached on this a little bit, so I think I need to point this out, that in this case, he talked about when this individual purchases insurance, he had the ability to purchase these different coverages. There's an affidavit in the record from Mr. Scott who purchased the insurance, and this was argued at the trial court level. This policy is so confusing, he simply said, there's multiple pages in the policy that's in the record that describes specifically what underinsured motorist coverage is in Mr. Scott's policy that he bought. And he signed an affidavit saying, I had no idea I didn't have underinsured coverage. And so, there's other things pending, but since we're getting into some of the ideas of what he did or what he didn't do or what he could have done at the time of purchase, I think that's relevant in light of the other arguments. Regarding the judge's question about how long this has existed, it's not as simple as, hey, this was 1982 and the Gliziski case controls. Now, the legislatures continued tinkering with the language of this, which we lay out in our brief. And I don't think that the legislature has a clear understanding of exactly how this impacts this situation. The other thing is, even if they did, this, as the court pointed out, these people would have been better off if they were hit by a tortfeasor with no insurance. They would have been able to recover up to $25,000 each under the underinsured portion of the policy. That's an absurd result. And the appellant doesn't want to say, well, let's look at factual scenarios and how this plays out, because in the real world, when this happens, and we kind of lay out some scenarios in our pleading in our brief, in this situation, they are better off if they're hit by someone with no insurance. And we argued this at the trial court level. And when you look at 7-203 in conjunction with the outcome of this, when the tortfeasor has minimum coverage and they injure more than one person, this is the outcome, is you've paid for this coverage. You have a minimum limits policy, but if you recover $100 from the tortfeasor, you're out. According to American Alliance's policy, you can't recover another single dime. And our assertion is that's an absurd result that it needs to be addressed by the court. So, Mr. Green, my interpretation of your argument is the statute as it reads supports the defendant's position, but that you think the result would be the case law says that the first place we go when we try to understand the policy of the state is what's in our statutes and what's been placed there by elected representatives of the people. Judge, I think you can look at the Cummins decision and see how that case was ruled. Cummins is directly on point with this case, other than the fact that it was not a minimum policy. And when you look at the underlying facts that there was a $50,000 liability limit, a $50,000 UIM policy, claimant received $35,000, and they look to fill that gap between what they obtained from liability versus their underinsured coverage. The court said providing coverage that fills the gap between the amount actually recovered from the liability insurance and the underinsured motorist policy limits is consistent with the intent of the underinsured motorist statute. Right. But as we've discussed, the interpretation of the relevant language in the relevant setting has gone against your interpretation. And as you've said, the legislature has tinkered around with this statute in other respects. There's also case that says when the legislature leaves a judicial decision alone, that indicates awareness and agreement with that decision. So aren't you really asking us to kind of be the third house of the legislature here to change what you think has been an inadequate job done by the legislature? Admittedly, Your Honor, to some extent, yes. When you look at the two statutes, when you look at 7203 and the language of 215 together, they are not consistent. The trial court didn't think they were consistent, and that's why they ruled the way that they did. If when you look at Cummins, and it's not a minimum liability policy, but if the court believes the same rationale and the same policy considerations in Cummins should apply to a minimum policy, then the court should find for the appellee. Other than I think what I would, you know, I would argue as somewhat of a hyper technical reading of 143, I think that's the only way that the court can look at the Cummins reasoning and rationale and say that it wouldn't apply to the facts before the court. Mr. Green, if we were to answer the certified question in the affirmative, how in our decision would we make consistent that decision with the language of 143A-2.4 and specifically the limiting or it doesn't mean what it says it means? I wouldn't expect this court to ignore it. Obviously, the court's very well versed in the facts, but I think the court would have to look at it and say when that statute is read in conjunction with 7-203 in the Cummins case, and the Cummins case is the case that's based on the current language of the statute. I'm sorry, if you could just limit your response to how would we word our decision in regards to future readings of this limitation in 143A-2. Would it be given any effect whatsoever or would we be saying it has no effect whatsoever? I think the court would need to look at that language and say that the statutes are inconsistent, this can't possibly be what the legislature intended, and it produces an absurd result that is inconsistent with public policy. Okay, thank you. Again, I don't think there's some, most of the case law I think cited by the appellate I think is pre-2004. I think as the court pointed out, Glaziski is not controlling if it was a statutory interpretation issue. Cummins is the closest decision we have to these set of facts, while admittedly not being on a minimum policy. I think that rationale applies here. Again, other than if the court looks at the specific language that it's referencing in 143 and says that that rationale doesn't necessarily apply. As the Logsdon case pointed out, the enactment of the mandatory under-insurance law is to protect against the risk of recovering less from an insured driver than would have been recoverable from an uninsured driver. That's exactly what happens here under American Alliance's interpretation of that policy. Unless there's any further questions from the court, I think that's all I have for now. Okay, thank you, Mr. Green. Mr. Eckler. I think it's very telling that Mr. Green doesn't even refer to the DeGrand case. The DeGrand case that answered the certified question from the Seventh Circuit that's nearly identical to the one that's presented here, that where you have a minimum limits policy, you're not required to have under-insured motorist coverage. Council relies on Cummins, and Cummins is inapplicable for another reason, not only because there's under-insured motorist limits above the minimum, but that there's under-insured motorist coverage at all. The insured in that case paid for under-insured motorist coverage. Council, if we're going to get into the affidavit and why I was speaking more generally about the options that an insured might have and the reasons for the policy choice that the General Assembly made, but one only needs to look at the deck page in this policy, which is in A20 of our appendix attached to our brief, to see that under-insured motorist coverage isn't listed. There's no premium paid. It's not there because he didn't choose that coverage. The question before this court is whether my client was required to provide a coverage automatically, that's the word we use in the question, automatically as a result of selling a minimum limits policy. As is clear from Justice Harris's questions, the statute doesn't require that. Council wants this court to read that language that begins with where and goes on in Section 143A to Section 4 out of the statute. Council also referred many times to juxtaposing Section 7203 with Section 4 of Section 143A-2. All Section 7203 does is provide the limit. And what Section 143A-2 Section 4 does is it says where you have uninsured motorist coverage, not liability limits, uninsured motorist coverage above the limit. And the policy here didn't have uninsured motorist coverage above the limit. That's the only way in which 7-203 plays into this scenario. The scenario that Council is bemoaning is a scenario created by the General Assembly. This is how they have erected Illinois mandatory automobile insurance. They have done that with full knowledge of the consequences of it over the course of 40 years. That's the only way in which they can read out language of the statute that is plain and unambiguous. If there are no other questions, we'd ask the court to answer the certified question in the negative and remand the matter for further proceedings. Thank you. All right. Thank you. I don't see any other questions. Thank you both. The court will take the matter under advisement and we will issue a written decision.